UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN -- SOUTHERN DIVISION

SHANNON BOCZKOWSKI,
    Plaintiff,

-vs-                                        Case No.
                                              Hon.
ALLIED INTERSTATE, LLC,
NATIONAL ENTERPRISE SYSTEMS, INC.
    Defendant.

## COMPLAINT & JURY DEMAND

*Shannon Boczkowski states the following claims for relief:*

### Jurisdiction

1. This Court has jurisdiction under the Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. § 227 *et seq.* and the Fair Debt Collection Practices Act, ("FDCPA") 15 U.S.C. §1692 *et seq.*

2. This Court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims.

### Parties

3. The Plaintiff to this lawsuit is Shannon Boczkowski who resides in Warren, Michigan.

4. The Defendant to this lawsuit are:

1

    a.    Allied Interstate, LLC ("Allied") which is a limited liability company doing business in Michigan.

    b.    National Enterprise Systems, Inc. ("NES") which is an Ohio corporation doing business in Michigan.

## Venue

5. The transactions and occurrences which give rise to this action occurred in Macomb County.

6. Venue is proper in the Eastern District of Michigan.

## General Allegations Relating to Allied

7. The central business mission of Allied is the collection of consumer debts using the United States mail service, telephone, telegram or other instrumentalities of interstate and intrastate commerce.

8. Ms. Boczkowski was the regular user and carrier of the two different cell phones at issue, (xxx)xxx-5608 and (xxx) xxx-7330 and the called party and recipient of cell phone calls from Allied.

9. In the period from October 2010 through 2012, Allied placed numerous calls to Ms. Boczkowski's cell phone seeking payment on a Sallie Mae Inc. ("Sallie Mae") student loan account.

10. During that time, Ms. Boczkowski had been making regular monthly payments of $50 to $100 on the account.

11. Allied placed the calls to demand that she pay a greater monthly payment and/or as a part of its protocol to place calls to debtors.

12. In the next year, Allied called Ms. Boczkowski on her cell phone on a regular basis to collect the loan, often multiple times in a day, or in a sequence of daily phone calls. On one day, Allied called her approximately 10 times.

13. This sequence of repeated and/or continuous calls to collect the loan constitutes an abusive and harassing method of collecting the account.

14. Additionally, during that period, Allied called Ms. Boczkowski's mother, her father, her brother, and other individuals. In those calls, Allied disclosed that Ms. Boczkowki owed money on the loan.

15. Allied called other people related to Ms. Boczkowski either through a familial or other relationship, and on information and belief, disclosed the outstanding loan to those individuals as well.

16. At that time, Allied was aware of Ms. Boczkowski's current phone number and address and thus its purpose was *not* to obtain location information. Rather the

contacts with these individuals was a harassing, oppressive and abusive means of collecting the account.

17. In the calls to Ms. Boczkowski, Allied conveyed a message with a prerecorded or artificial voice.

18. The prerecorded or artificial voice message calls were placed with an automated telephone dialing equipment, without human intervention.

19. On information and belief, Allied placed the other calls to Ms. Boczkowski using automated telephone dialing equipment, without human intervention.

20. Each call Allied made to Ms. Boczkowski was made using a "automatic telephone dialing systems" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers as specified in 47 U.S.C. § 227 (a)(1).

21. Each call Allied made to Ms. Boczkowski was done so without the "prior express consent" of Ms. Boczkowski.

22. In nearly every call that Ms. Boczkowski had with Allied, Ms. Boczkowski told Allied's agents to stop calling her.

23. Allied continued to call Ms. Boczkowski.

24. These calls caused Ms. Boczkowski numerous interruptions and disruptions to her daily life.

25. Ms. Boczkowski also told Allied on numerous occasions to stop calling her relatives and otherwise making contact with third parties on the account.

26. In response, Allied told Ms. Boczkowski that they could call anyone they want.

27. Allied continued to call her relatives and other third parties on the account after Ms. Boczkowski's request.

28. The calls to Ms. Boczkowski's relatives and other contacts caused her anxiety, embarrassment, distress and concern.

29. Allied's corporate policy is structured to continue to call individuals like Ms. Boczkowski and other third parties, even after they have received cease telephone contact requests.

30. Allied has numerous other federal lawsuits pending against them alleging similar violations to those in this complaint.

31. As a result of Allied's wrongful conduct, Ms. Boczkowski has suffered damages.

## General Allegations Relating to National Enterprise Systems

32. The central business mission of NES is the collection of consumer debts using the United States mail service, telephone, telegram or other instrumentalities of interstate and intrastate commerce.

33. The Sallie Mae account was transferred to NES after it was withdrawn from Allied.

34. NES and Ms. Boczkowski entered into an agreement whereby NES would accept $100 monthly payments from Ms. Boczkowski by automatic withdrawal from her bank account.

35. NES complied with this agreement for over a year during which it took regular monthly payments from her account. The last monthly payment automatic withdrawal by NES was in December 2013.

36. In January 2014, NES told Ms. Boczkowski that it would no longer accept $100 monthly payments. Rather, it told her that NES would only accept a large lump sum payment on the account.

37. NES used these statements as a leverage to seek a larger payment amount from Ms. Boczkowski.

38. Additionally, NES told Ms. Boczkowski that Sallie Mae that would not accept her regular monthly $100 payments but was demanding a payoff of the account.

39. On information and belief, it is more profitable for NES to collect large lump sum payments rather than smaller monthly amounts.

40. Ms. Boczkowski told NES that she could not afford the large lump sum and told NES she wanted to continue with the agreed upon $100 monthly payment.

41. NES refused and would not take any more automatic monthly withdrawals.

42. In the period from January 2014 through June 2014, Ms. Boczkowski sent NES her regular $100 monthly payment.

43. NES received the payments but refused to cash her checks.

44. NES's refusal to comply with the monthly payment agreement was an unfair and unconscionable practice.

45. NES's statement that Sallie Mae would not accept the monthly payments was false. Sallie Mae never expressed a refusal of the monthly payment agreement.

46. NES used these false statements as leverage to seek a larger payment amount from Ms. Boczkowski

47. On information and belief, excessive interest and late fees were assessed

against Ms. Boczkowski during the period in which NES wrongfully refused to accept her monthly payments.

48. The account was subsequently transferred by Sallie Mae to a new debt collector, through which Sallie Mae is currently accepting her monthly payments.

49. As a result of NES's wrongful conduct, Ms. Boczkowski has suffered damages.

## COUNT I – Telephone Consumer Protection Act of 1991 and 47 C.F.R. 16.1200 *et seq.* (Allied)

50. Ms. Boczkowski incorporates the preceding allegations by reference.

51. Allied repeatedly placed non-emergency telephone calls to Ms. Boczkowski's cell phone using an automatic telephone dialing system or prerecorded or artificial voice in violation of the TCPA, including 47 U.S.C. § 227(b)(1)(A(iii).

52. As a result of Allied's negligent violations of the TCPA, Ms. Boczkowski may recover statutory damages of $500.00 for each and every call in violation of the statute.

53. As a result of Defendants willful violations of the TCPA, Ms. Boczkowski may recover statutory damages of up to $1,500.00 per call in violation of the statute.

## COUNT II – Michigan Occupational Code (Allied) as alternative to claims under the Michigan Collection Practices Act

54. Ms. Boczkowski incorporates the preceding allegations by reference.

55. Allied is a "collection agency" as that term is defined in the Michigan Occupational Code ("MOC"), M.C.L. § 339.901(b).

56. Ms. Boczkowski is a debtor as that term is defined in M.C.L. § 339.901(f).

57. The Sallie Mae account constitutes a "debt" within the meaning of M.C.L. § 339.901(a).

58. Allied's repeated and continuous telephone calls to Ms. Boczkowski constitute an harassing, oppressive and/or abusive method to collect a debt in violation of, but not limited to, M.C.L. § 339.915(n).

59. Each of Allied's calls and other communications with third parties regarding the account constitute an harassing, oppressive and/or abusive method to collect a debt, in violation of M.C.L. § 339.915(n).

60. Allied's placement of calls to Ms. Boczkowski's cell phone in violation of the TCPA constitutes an harassing, oppressive and/or abusive method to collect a debt in violation of, but not limited to, M.C.L. § 339.915(n).

61. Allied failed to implement a procedure designed to prevent repeated and

continuous calls in violation of M.C.L. § 339.915(q).

62. Allied failed to implement a procedure designed to prevent the placement of unconsented calls to cell phones, in violation of M.C.L. § 339.915(q).

63. Ms. Boczkowski suffered damages as a result of these violations of the MOC.

64. These violations of the MOC were willful.

## COUNT III – Michigan Collection Practices Act (Allied) as alternative to claims under the Michigan Occupational Code

65. Ms. Boczkowski incorporates the preceding allegations by reference.

66. Allied is a "regulated person" under the Michigan Collection Practices Act ("MCPA"), M.C.L. § 445.251(g)(xi).

67. The Sallie Mae account constitutes a "debt" within the meaning of M.C.L. § 445.251(a).

68. Allied's repeated and continuous telephone calls to Ms. Boczkowski constitute an harassing, oppressive and/or abusive method to collect a debt in violation of, but not limited to, M.C.L. § 445.252(n).

69. Each of Allied's calls and other communications with third parties regarding the account constitute an harassing, oppressive and/or abusive method to collect a debt, in violation of M.C.L. § 445.252(n).

70. Allied's placement of calls to Ms. Boczkowski's cell phone in violation of the TCPA constitutes an harassing, oppressive and/or abusive method to collect a debt in violation of, but not limited to, M.C.L. § 445.252(n).

71. Allied failed to implement a procedure designed to prevent repeated and continuous calls in violation of M.C.L. § 445.252(q).

72. Allied failed to implement a procedure designed to prevent the placement of unconsented calls to cell phones, in violation of M.C.L. § 445.252(q).

73. Ms. Boczkowski suffered damages as a result of these violations of the MCPA.

74. These violations of the MCPA were willful.

### COUNT IV – Fair Debt Collection Practices Act (NES)

75. Ms. Boczkowski incorporates the preceding allegations by reference.

76. At all relevant times NES – in the ordinary course of its business – regularly engaged in the practice of collecting debts on behalf of other individuals or entities.

77. NES is a "debt collector" under the FDCPA.

78. At all times relevant to this complaint, NES sought to collect a "consumer" debt from Ms. Boczkowski.

79. NES's failure to comply with the agreement to accept monthly $100 payments and its demand for a large lump sum is an unfair and unconscionable means of collecting in violation of, but not limited to, 15 U.S.C. §1692(f).

80. NES's violation is continuing and ongoing for each and every month it has failed to withdraw and/or accept the payment.

81. NES's statement that Sallie Mae would no longer accept her monthly payments was a material false statement in violation of, but not limited to, 15 U.S.C. §1692e(2) and (10) as it was designed to pressure Ms. Boczkowski into making a larger and earlier payment on the account.

82. Ms. Boczkowski suffered damages as a result of these violations of the FDCPA.

## COUNT V – Michigan Occupational Code (NES) as alternative to claims under the Michigan Collection Practices Act

83. Ms. Boczkowski incorporates the preceding allegations by reference.

84. NES is a "collection agency" as that term is defined in the MOC, M.C.L. § 339.901(b).

85. Ms. Boczkowski is a debtor as that term is defined in M.C.L. § 339.901(f).

86. The Sallie Mae account constitutes a "debt" within the meaning of M.C.L. §

339.901(a).

87. NES's failure to comply with the agreement to accept monthly $100 payments and its demand for a large lump sum is an oppressive and abusive means to collect a debt in violation of, but not limited to, M.C.L. § 339.915(n).

88. NES's statement that Sallie Mae would no longer accept her monthly payments was a misleading, deceptive, inaccurate, and/or misleading communication in violation of, but not limited to, M.C.L. § 339.915(a) and (e).

89. Ms. Boczkowski suffered damages as a result of these violations of the MOC.

90. These violations of the MOC were willful.

## COUNT VI – Michigan Collection Practices Act (NES)as alternative to claims under the Michigan Occupational Code

91. Ms. Boczkowski incorporates the preceding allegations by reference.

92. NES is a "regulated person" under the MCPA, M.C.L. § 445.251(g)(xi).

93. The Sallie Mae account constitutes a "debt" within the meaning of M.C.L. § 445.251(a).

94. NES's failure to comply with the agreement to accept monthly $100 payments and its demand for a large lump sum is an oppressive and abusive means to collect a debt in violation of, but not limited to, M.C.L. § 445.252(n).

95. NES's statement that Sallie Mae would no longer accept her monthly payments was a misleading, deceptive, inaccurate, and/or misleading communication in violation of, but not limited to, M.C.L. § 445.252(a) and (e).

96. Ms. Boczkowski suffered damages as a result of these violations of the MCPA.

97. These violations of the MCPA were willful

## Demand for Jury Trial

98. Plaintiff demands trial by jury in this action.

## Demand For Judgment for Relief

99. *Accordingly, Ms. Boczkowski requests that the Court grant:*

    a. *Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment, wrongfully accrued interest and late fees on the loan.*

    b. *Statutory damages.*

    c. *Treble damages.*

    d. *Statutory costs and attorney fees.*

                                                  Respectfully Submitted,

                                                  By:  <u>s/ Julie A. Petrik</u>
                                                  Julie A. Petrik (P47131)
                                                  LYNGKLIP & ASSOCIATES
                                                  CONSUMER LAW CENTER, PLC
                                                  Attorney For Shannon Boczkowski
                                                  24500 Northwestern Highway, Ste. 206
                                                  Southfield, MI 48075
                                                  (248) 208-8864
Dated: January17, 2015                 Julie@MichiganConsumerLaw.Com